The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Thank you. Please be seated. We have two cases on today. The first one, number 2009-1383, in Re Bauer. Mr. Cipone, or is it Cipone? Cipone. Cipone, very well. You may begin when you're ready. Morning, your honors. Essentially, this case begins with anticipation. First, what is anticipation and how is it read against the applicant's claimed invention? Anticipation requires a single document to have within its four corners, not only all the elements of the claims, but also arranged as in the patented device. In this invention, the key limitation is means for regulating an increase in pressure in at least one room relative to an outside pressure to vary the room pressure in correspondence to the selected room temperature. There's several things in that limitation. Means for regulating an increase in pressure to vary the pressure in correspondence to the selected room temperature. Now, those elements would need to be found within Johansson in order for there to be anticipation. You can look all through Johansson, but there is not, never even mentioned the selected room temperature as having anything to do with pressure. In fact, the opposite is true. I have a hard time figuring out, quite frankly, exactly what this invention entails. Let me get at that question by asking you why it is that the system, let's say, of the heating system in my automobile doesn't read on this claim or the claim doesn't read on that. I have a system that's very frequently encountered in which I can vary the speed of the fan and I can vary the temperature of the heat coming out of the system. And I have a thermometer inside the car which both establishes what the temperature is and ultimately I have an idea as to what temperature I want to get up to. So I get into the car in the morning, it's a winter morning, it's very cold. I turn the fan up to four, which is the top level, and I move the temperature up pretty close to the top level of the heat. Why haven't I done exactly what this claim recites? Because by turning up the fan, I'm increasing the pressure inside the car. Actually, that's not necessarily true because the way a fan operates, it's got a suction side and a discharge side. However you increase the fan speed in the blower side, you're also increasing the suction on the other side. But the suction is coming from outside the passenger compartment. You're increasing volume. You're not necessarily sucking in that much air from outside. It recirculates the air within the car, about 90% of it. But I am increasing the pressure to some extent because otherwise there's air coming in faster than it's going out. Again, there may be a transient pressure increase but it'll stabilize and then there won't be a pressure increase anymore. Why will it stabilize? I don't have any venting out the air. It's a closed loop, again, with a fan. In order for it to blow air, it has to suck air. No, but the air is coming from the engine chamber. It's not coming from within the compartment, the passenger compartment. Assume with me that it does come from the engine chamber. If I was to assume that you just had air from the outside blowing in and nothing was exhausting, yes, you'd have a closed system which would be different from an air conditioning system. Would this claim read on that system? No. Why? Because you haven't actually related the temperature to make that change in pressure. Well, no, the temperature, there's a five. Please, let me get my question out so we're on the same page. Certainly. There's a 10 degree difference between the selected temperature, which is the temperature I want, and the actual temperature. Okay. And I'm selecting a rapid increase in pressure by moving the knob up to four on the fan. Why isn't that doing what the claim says? Well, it isn't because you have two different controls there. You have a fan control, which you could turn the fan up or down and just recirculate more or less air. Well, remember, please, remember that I am, by hypothesis, bringing in air. I'm not just recirculating air. I'm bringing in air from the engine compartment, from outside the passenger compartment. Okay? Okay. If you're doing that at some point, the air is not going to come in anymore because it's going to deadhead and it's not going to be able to have the air flow. Right. And you're not integrating the temperature with the pressure. The way this works is you don't just turn the thermostat up and then hot air comes in and then hot air goes out, which is what's a normal system. You're going to make a change in pressure that is regulated. You don't just say it's going to increase by a certain amount or a variable amount that you don't even know you don't care about. In your car, do you care what the pressure goes up to? In this system, you're required to regulate that pressure and set it at a particular maximum so that you get a more optimum increase in the temperature and air distribution. And correspondingly, in the other situation, you go back down to the minimum. You have a regulated minimum that you want to achieve. You don't do that in your car. You don't care. It's not really relevant. But in these systems, it is relevant. It makes a significant difference because instead of having to have huge volumes of air circulate through a building where you have, just like Johansson, you have two fans, one blows, the other one sucks air out, it's in constant steady state, and the pressure remains the same. When you go with the Bower system, you cut down substantially on the amount of recycle of air, and you can include a lot more air. And what you require is when the temperature goes up, you're going to block off something to make sure that you get from that minimum to the maximum pressure that you want, which increases distribution of the air that you're coming in into the area and basically gives you a rapid rise up and avoids hot spots and places where you're getting a lot of flow without getting a lot of heat or temperature. And then on the other hand, when you're cooling, when it goes down, you're going to change that pressure. You're going to set it to something that you particularly want it to be, the lower level, the P minimum, and it's going to allow that to decrease. Now you're going to be opening the discharge more than what's going in there, and you're going to that regulated pressure. But I thought that – and I have some of the same problems that Judge Bryson has been articulating. I thought that Johansson actually increased the pressure in the system during the whole time that the system was operating. No, actually, Johansson – And it wasn't – in fact, that it wasn't just a transient increase in pressure, but a pressure that continued. And that the purpose of the Johansson patent is to regulate that pressure. Well, the purpose of that patent is to maintain a constant pressure regardless of variations that may occur. The way most buildings are, you have a set excess pressure or excess amount of air that you have in because you have exfiltration, and it maintains that regardless of whatever is happening. Let's assume for a moment that, in fact, I'm correct. Let's assume that I am correct, that the system in Johansson increases the pressure when the system goes on and that it stays at a higher level while the system is on, and that the triggering of the thermostat causes the blower to go on and the dampers to open in the Johansson system. In other words, there's a thermostat. It causes the fan to go on. The pressure increases. On that assumption, which you may disagree with, on that assumption, why isn't Johansson anticipatory? Because it doesn't allow you to regulate that pressure to increase or decrease it in correspondence to that temperature. Just let me explain briefly the way Johansson works again. It has two blowers and an outlet, and this is flowing through. There's a thermostatic damper that's going to open or close relative to a room if you call for hot air, except nothing related to this temperature control is integrated with this. This system is blind. It only says, I want to maintain X pressure in this building regardless of what happens. Let me ask you to assume that we don't agree with that, that there is a thermostat in the Johansson system and that when the temperature goes above or below, it won't change the way it works. You have to allow just to finish this question. So let's proceed on that basis. The Johansson system, let's assume, has a thermostat and that when the thermostat is triggered on the upside or the downside, that it causes the fan to go on and that the pressure increases and stays constant as long as the system is operating. Now, it strikes me that you've drafted a very broad claim here. Maybe you could have drafted narrower ones. It seems as though maybe you did, in fact, have narrower ones. But this is a very broad one. Why isn't this broad claim going to cover that situation? Again, you're not regulating the pressure to vary that pressure in correspondence to the temperature. In your example, the fan turns on when you ask for heat and it sets at some level. For example, it's going to blow at a certain amount and go through and nothing's going to happen. You turn it off. Well, actually, these blowers never turn off. They just have dampers in there to open and close to let air in. Just trying to read on your example, there's nothing in there that tells you, well, I want to set a particular pressure that's going to optimize my mixing in the room. There's nothing to say when this occurs, we want to vary this pressure in this way. And when something else occurs, we want to vary this pressure in another way. And so you're regulating the pressure. Mr. Cipone, you have to wait for the judge to finish his question. So let's proceed on that basis henceforth. So you're relying on the word vary because there's no precise relationship between the pressure and the temperature set? Is that what you're saying? The regulating means are used to vary that room pressure. So number one, you have to have some kind of control system that's going to allow you to controllably vary that pressure. What is the triggering mechanism to do that is the control signal that says there's a temperature increase or decrease required. So this regulating means reads that and determines my pressure should be X or my pressure should be Y. In the systems like Johansson and other systems, pressure is irrelevant to temperature control. They don't integrate the two. The temperature control systems work independent of the pressure controls. So there's no linking just as in Johansson. Well, there is a linking in the sense that once the thermostat triggers the system going on, the pressure is increased. Well, taking the simple example of your fan going on, again, at the same time that fan is going on, it's drawing air out of that room. You're changing my hypothetical. Under my hypothetical, the fan goes on and the pressure increases and it stays increased while the fan is on. I'm having a hard time matching the hypothetical to the way in which these systems operate and what it is that we're trying to distinguish from. Again, when a fan goes on, just a simple system. Most places have maybe a single fan where in and out air goes through. You have a closed system. When the fan goes on, you may have a transient increase, but then it levels out as air gets drawn out of the room because it has to circulate so that whatever your pressure increase is, it's incidental. It's not controlled. The only purpose of putting that fan on is to get air to flow through the room. Nowhere in these systems does it say, well, not only do I want air to flow through this room, but I want to change the pressure in that room. I want it to vary in a certain way that's going to allow the mixing to increase and to allow more efficiency in the way in which the air conditioning systems operate. I mean, this claim is broadly drafted, and that's correct, because this is really a breakthrough invention in terms of air conditioning systems. It goes completely against the conventional wisdom in that most people would say you don't need to integrate pressure and temperature together. We operate buildings where we have this pressure control stream like Johansson, which is going to maintain a perfect level the whole time in one area. Now we're saying, no, you don't really want to do that. You want to make changes in room pressure depending on what your temperature is going to be. It's something that hasn't been done before, and it results in some significant advantages. And because this is a very important invention in the way it operates and also in the results, it needed to be drafted broadly. I mean, I've drafted plenty of claims, and the core of the invention has to be in the least words possible in order to avoid undue limitations. That's my job is to draft the core of the invention, and this is really what the core is. And then it gets tested in the patent office by references. And so a reasonable interpretation of Johansson does not find a selected room temperature being integrated in the regulation system. You can see that maybe there's some transient pressure increases, but where is the control? Where is the integration of control that's going to allow you to vary that in a controlled way, up or down, depending on what the temperature changes? It's not in Johansson. And so how am I going to draft a claim or amend this claim to avoid something that's speculative in nature? Because that's not what Johansson does. If I'm going to try and avoid Johansson, I have to say, well, Johansson has X, Y, and Z. It doesn't have Z. What am I going to add that's going to change that? So I had to leave it as broad as possible in order for Mr. Bauer to get the main benefits of the invention because this is, once it's understood by people in this art, it's going to be copied. It's going to be knocked off because it is very important, and I believe he needs the broadest protection possible, which is why we have the broad language in this claim. If the art had indicated that this was in here, I would have amended it. But it isn't. I did not find the set selected room temperature in this reference. I did not find the selected room temperature going into a regulator, which is going to allow a variation in that room temperature and room pressure in correspondence to that temperature. It's just not in the reference. Mr. Schapone, you're well into your rebuttal time. Would you like to save the rest of it? Yes, please. Okay, very well. We'll hear from the solicitor. May it please the Court. I think the issue has been focused here, Your Honors. I think you kind of hit the point that what this really is about is the breadth of this claim. And I think the office, in examining this claim, when the board got the case, as long as the examiner had it, they really struggled and made many, many, many attempts to, like, let's focus on what is the scope of this claim. In fact, I think the board remanded it back to something called a 4150 order and said, I need to figure out what the corresponding structure is for implementing this function. And there was even a hearing at the board argument where they asked these questions to the appellant. And I think if you really look at the whole record and see what happened and look at the express language of the claim, the claim is simply broader than what the appellant is now arguing. Many of the features that he's brought up, the specificity of the pressure in the room, his point, and I understand his point. I mean, it's clear to me what he's saying that the invention is, is that when you set a temperature at a higher level in the room and you now bring in air into that room in response to that temperature, he's saying it doesn't just let the air in. It brings that pressure up to a specified point, like to a specific point. Well, that's what I don't understand. I understand. I understand. I don't want to cross examine you with his argument. But I am hard pressed to understand why in my hypothetical car, let's assume for present purposes that the air is coming from the engine chamber and it's not simply recirculating air in the passenger compartment. Now, given that at a certain point, if the pressure rises because the fans are blowing air in and there's no significant air outflow, the fans will no longer be increasing the pressure because the pressure in the inside will be greater than the capacity of the fans to increase the pressure by blowing more air in. I understand that. But why in my hypothetical system, if I decide, boy, it's cold in here, I want to select a high temperature and I run the fan up to the top level and I turn the heat up to the top level, why am I not doing what this claim recites? That's what I don't understand. I'm asking maybe the wrong person, but I just want to make sure I understand both parties' position with respect to that. And I think I do understand your question and I understand Appellant's response. But I believe that the agency looked at this claim and just said the claim simply isn't that narrow. This claim is broad enough to encompass the hypothetical that you've articulated. In fact, Johansson, another similar common air conditioning system with some other bells and whistles on it to regulate the peaks and valleys, that's what this dead van system is in Johansson. But your sample is, hey, I go into a room or into my car, the temperature's too cool. I set my temperature to a higher level. That is now a device. That's a control system. It says, hey, I need more air and I need more warm air. And it opens up a vent and the more warm air starts to come into the closed area or your car or your room. Increasing the pressure. And the pressure goes up. Now, it's true, we don't know exactly to what level that pressure's going to go up to, but the pressure will increase and the pressure will increase in response to or as a function of a selection on the temperature, which is exactly what the claim phrase says. It says, means for regulating an increase in pressure in at least one room relative to an outside pressure to vary the room pressure in correspondence to or as a function of the selected temperature. That's exactly what's happening. And I think Appellant's point is, well, yeah, it is varying it. He admits that it's varying it, but he's saying it's not varying the pressure with the kind of specificity that his disclosed invention is. And I don't dispute that. I think there are parts of his disclosure that support the argument he's making. I just think that's not in the claim. And so the agency looked at this claim with breadth. It is broader than the way he's looking at it, but I don't think the agency's view of the claim is unreasonable. And that's really what this boils down to. Was the board reasonable in construing the claim with this much breadth? And you touched on this. The board construed in correspondence to as a function of, at least vis-a-vis Johansson, as a function of for a short period of time at the outset of the functioning of the system. That's correct. And as I pointed out, we pointed out in our red brief that time is not an element in this claim. I understand. And Appellant doesn't disagree with that. He said in his reply brief, you're right, time is not a feature. But his big point over and over and over again is when he says regulated, he means regulated to a specific pressure setting. But when you look at this claim, there's nothing in here about bearing the pressure to a particular degree. That's the question, though. Don't you think that in correspondence to carries with it, at least implicitly, more force than just a broader sort of in reaction to? Well, I think the board did construe that as a function of. And the appellant agreed that's fine. But when you say something is a function of something else, it's not necessarily directly proportional. It's not necessarily proportional in any degree. Just when you change the temperature, you've changed. The pressure is now going to be altered. If you want to raise the temperature. At least for a short period. And remember, this would be in the reverse. Like let's say it was a cooling situation instead of a heating one. And the room is too hot in the summer. And I say I want it to be cooler. So now I lower the temperature. And I say it's going to open up the duct. And more higher pressure cool air is going to be forced into the room. And by the way, it necessarily has to be higher pressure air coming in. Because if it wasn't higher pressure, it wouldn't come in. Because just general rules of physics say you've got to have a pressure differential to get the air in the room. So necessarily when that duct opens. If air is coming into the room, the pressure is going up. Exactly. And I think that's the basis of the agency's position. I think that that's the way the agency viewed the claim. They read the specification. They asked the appellant for his position on what the corresponding structure was. And we've got numerous citations in our brief to the record on that point. Well, now the answer that I think the inventor would give as to that point is to say, well, that doesn't take adequate account of the exhaust duct and the exhaust motor, whatever it is that's moving air out at roughly a corresponding, wrong word, an equal rate as the air coming in. And I understand the appellant's point. Again, if the air was exhausting at exactly the equal rate as air was coming in, arguably the pressure would just stay constant. However, if you read Johanson, Johanson specifically says it necessarily regulates the pressure in the room to keep it higher than the outside. And why? To prevent infiltration. So Johanson does have an exhaust blower and an inlet blower, and they purposely keep the exhaust blower operating at a slightly lower level to prevent infiltration. And I cited that in our brief as well. I can give you the site if you'd like. The pressure at a higher level. Right. So my point is Johanson specifically expressly teaches we will not have equal exhaust and inlet fans. We purposely want the exhaust to be slower, which means we're trapping some of the air in the room. So when we let more air in, the pressure is going to vary. In fact, Johanson even says when the air – they call them dampers rather than air valves or air ducts, but they're all basically the same thing. When the air valves or dampers open and close in response to the thermostatically controlled device, because the thermostat's telling those dampers to open and close, it says the pressure's going to vary accordingly. And so it contemplates that when you open a duct and let more flow in, yeah, there's going to be a pressure surge as a result of that or a pressure variation. In fact, if that pressure variation is too great, like let's say you open up this duct and the air just comes blowing in at way, you know, way too much airflow, and that's disturbing to the people in the room, Johanson has a safety mechanism, which they call a dead band controller, which if it goes above a certain peak, it's going to back off on that door and help close it back so the pressure variation isn't so great. Now, that's not keeping the pressure constant. That's keeping the pressure from getting too out of control. So Johanson contemplates pressure variations with alterations of the ducts, which is in response to or as a function of the selected temperature, which in our view is exactly what the claim requires. So you said a moment ago that we should defer to the board's reasonable interpretation of the claim. I had thought that in claim interpretation before the board, where we're looking to the broadest reasonable interpretation, we're still conducting a de novo review of the claim, right? We're not deferring to the board's judgment. That's correct, Your Honor. I don't know if I used the word defer, but what I did say, the question before this court is, was the board's construction reasonable? Because that's the test. Now, I agree. The law says it's de novo review. I guess I would say that's not the question. The question is, was the board correct in giving it this construction as the broadest reasonable interpretation? Okay. I would be happy with those words, Your Honor. I'd be happy with those words. Was the board correct in giving it this construction as the broadest reasonable? Let's just say, for example, appellant's construction, although narrower, let's just say it's also reasonable. And then the board's construction, broader, is reasonable. Now you have two reasonable ones. If this is the broader one, as long as it's reasonable, affirmed. That's our view, and I thank you for correcting me, but it sounds like you articulated it with more precision than I did, and I apologize if I misspoke. But I think that's pretty much our case. And if, indeed, the appellant came in and made an amendment, like you suggested, Your Honor, and made an amendment with respect to one of these other features, like it's not just dependent on selected temperature, but it's dependent upon upstream pressure or dependent upon external pressure or all these other things that are in the spec, putting that in the claim would definitely distinguish it from this particular situation. My understanding, there is a continuation application, and in that continuation application, that's not in this record, but that there have been amendments that have led to a patent. I can't speak to that specifically, but my point is, when he's willing to make those amendments to distinguish it, you're right. That corrects this problem of having this broad claim encompassing, like, your car air conditioning system. What you're saying is that the way this claim is drafted, it covers virtually every heating and air conditioning system. I don't want to say every, but at least the ones we have in front of us, and I would say as well as the hypothetical that Judge Bryson presented for us as well. Thank you, Your Honor. I don't have anything further unless you have any questions. No questions. Okay. No questions. Mr. Spoon? Yes. Yes, Your Honors. Just one thing. In order to take the board's interpretation, then you have to read out means for regulating that pressure in correspondence to selected room temperature because incidental transient pressure variations are inherently uncontrolled and variable, and it's not a regulated variation in the room pressure, and that's an important part. And the other part in the hypothetical, again, where's the regulator in your system that's telling you to increase the two things in tandem in certain ways and not only increase, every time you turn on the fan it increases, whether heating or cooling in your system. In this system, you also have to decrease that excess room pressure in order to take advantage of the features of the image, and it can vary it either way. And so it's a real control system that has a selected room temperature as an input to a regulator that can vary that pressure up or down in order to make dramatic increases in efficiency and also to actually make more comfort in a room. Okay. Thank you, Your Honor. Thank you, Mr. Spoon. Mr. Markel? We thank both counsel. The case is submitted.